AO 91 (Rev. 11/11) Criminal Complaint   (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| | ) | |
| D'ARCO REDD | ) | **3:26 mj 209** |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED
RICHARD W. NAGEL
CLERK OF COURT

MAY 22 2026 3: 15 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-DAYTON

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 20, 2026 _____ in the county of _____ Montgomery _____ in the

_____ Southern _____ District of _____ Ohio _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§841(a)(1) and (b)(1)(C) | Possession with intent to distribute a controlled substance. |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug offense. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

s/ Sarah Deamron
*Complainant's signature*

SA Sarah Deamron, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means)*.

Date: _____ 5/22/26 _____

*Judge's signature*

City and state: _____ Dayton, Ohio _____

PBS  USMJ
*Printed name and title*

## AFFIDAVIT

I, Sarah Deamron, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 2015. Upon graduation from the FBI Academy in Quantico, Virginia, I was assigned to the Milwaukee Division, Green Bay Resident Agency, and in October of 2022, I transferred to the Cincinnati Division, Dayton Resident Agency. My primary duties as a Special Agent consist of investigating criminal enterprises, narcotics investigations, organized crime, and violent crimes to include unlawful possession and possession with the intent to distribute controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841, 843, and 846. I am familiar with federal firearms laws, and investigations into possession of a firearm by a convicted felon, possessing a firearm in furtherance of a drug trafficking crime and the associated violations of Title 18, United States Code, Sections 922 and 924. As part of my standard training to become a FBI Special Agent, I have received specialized training in the means and methods by which individuals and criminal enterprises conduct their illegal activities, as well as in the use of various investigative techniques used to uncover unlawful activities. Based upon my experience and training, I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their use of code words and numbers to conduct their transactions, their use of multiple telephones to conduct their illegal activities, their methods for concealing narcotics and narcotics proceeds and their use of firearms, violence, and threats of violence to protect their criminal organization. I have received further specialized training concerning the interception of wire communications.

1

2.      I have participated in various types of electronic surveillance, including the interception of wire communications, in investigations of drug traffickers, money launderers, and violent criminal enterprises.  I am also familiar with, and have personally participated in, other normal methods of investigating criminal enterprises, including, but not limited to, visual surveillance, the questioning of witnesses, the use of informants, undercover operations, the use of pen registers, including pen registers in the form of digital analyzers, and the use of location information from cell phones to identify drug traffickers and reveal their methods of operation.

3.      I have experience in the investigation, apprehension, and prosecution of individuals suspected of being involved in federal firearms and drug offenses.  I have specific experience in investigating the use of cell phones by criminal suspects who are involved in the commission of those offenses.  I also have knowledge of the technology used by law enforcement authorities to identify cell phones' users and geographic locations.  I have applied for, obtained, and analyzed, or assisted other federal Special Agents and local police officers with applying for, obtaining, and analyzing historical call detail records.  In addition, I have mapped historical records related to telephone cell site information, ping order locations, and/or GPS records.

4.      I know from my training and experience that individuals typically keep cell phones on their persons or within their immediate control, such as in the cupholder of a car they are driving, because cell phones are regularly used and possessed as an item of personal property. I also know from my training and experience that in today's age it is typical for individuals engaged in criminal activity to possess multiple active cellular phones at one time. For example, many criminals have one phone that they use for personal communications (e.g., with family members) and another phone that they use to communicate with criminal associates.

5.      I know from my training and experience that drug traffickers frequently use private vehicles to transport drugs, drug proceeds, and other tools of the drug trafficking trade. I also know that drug traffickers frequently use private vehicles to travel to meet with associates, including sources of supply and drug customers, and to travel to places where contraband is stored, such as stash houses.

6.      This affidavit is submitted in support of a criminal complaint and seeks the issuance of an arrest warrant against D'Arco REDD for the violations of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. Section 924(c). The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

7.      On or about May 20, 2026, in Dayton, Ohio, Montgomery County Sheriff's Office (MCSO) Deputy Joshua Bordeaux was looking for a stolen black 2025 Chevrolet Malibu bearing West Virginia registration N458291A ("the Malibu") that was reportedly in the possession of D'Arco REDD. The Malibu was equipped with OnStar, a technology that transmits real-time location data through built-in cellular and GPS systems. Deputy Bordeaux arrived near where OnStar indicated the Malibu was located and observed in an apartment complex parking lot a vehicle matching the stolen vehicle's description. Surrounding this vehicle were several men, including an individual Deputy Bordeaux positively identified as D'Arco REDD.

8.      Deputy Bordeaux waited for Dayton Police Department (DPD) officers to arrive on-scene; once the DPD officers arrived, the DPD officers confirmed that the vehicle Deputy

3

Bordeaux had observed was in fact the stolen Malibu. Meanwhile, Deputy Bordeaux maintained visual surveillance on REDD, who was walking away from where the Malibu was parked. Deputy Bordeaux observed that REDD appeared visibly nervous after the DPD officers arrived and that REDD attempted to distance himself from the DPD officers.

9. After observing REDD's body language and demeanor following the DPD officers' arrival, Deputy Bordeaux got out of his marked MCSO vehicle and encountered REDD. During that encounter, Deputy Bordeaux asked REDD if REDD had a firearm in the cross-body bag that REDD was wearing; REDD said no but indicated that he (REDD) did have a loaded firearm in his pants.

10. Deputy Bordeaux, with the assistance of the DPD officers, detained REDD in handcuffs and safely retrieved the firearm from within REDD's underwear. The firearm was a Glock 45 9mm bearing serial number BPBS353, which was loaded with a live round in the chamber and an extended magazine. Pursuant to Ohio state law, REDD could not lawfully carry a concealed weapon. During a search incident to REDD's arrest on state charges, law enforcement found that REDD had on his person three cell phones; the keys to the Malibu; personal items; and U.S. currency. Inside REDD's cross-body bag was a digital scale with suspected drug residue. Near the scale in the same pocket of the cross-body bag was a black cloth bag, inside of which was a substance that Deputy Bordeaux thought appeared to be a large quantity of crack cocaine. The suspected crack cocaine, which weighed approximately twenty-eight grams, was later field-tested with a TruNarc test which showed that the substance tested positive for fentanyl, a Schedule II controlled substance. The suspected fentanyl and the digital scale with residue seized from REDD will be sent to a laboratory for a full forensic analysis. I know, based on my training and experience, that twenty-eight grams of fentanyl is a significant

4

quantity that far exceeds a personal-use amount; for context, the Drug Enforcement Administration has found that a dose as low as two milligrams can be fatal to adults.[1] I know, based on my training and experience, that the quantity of fentanyl REDD possessed was a trafficking quantity; further, I know that drug traffickers frequently carry digital scales so that they can weigh drugs for customers during hand-to-hand drug transactions. The U.S. currency REDD had included denominations that are consistent with street-level drug sales.

11.     I reviewed a criminal complaint and subsequent indictment filed in the Circuit Court of Kanawha County, West Virginia, reflecting that in 2021, REDD was charged with felony possession of a trafficking quantity of fentanyl. According to the criminal complaint, REDD admitted to law enforcement that REDD possessed approximately forty-nine grams of fentanyl that had been seized from REDD's hotel room. In 2023, after entering into a plea agreement in connection with that offense, REDD was convicted of Attempt to Commit a Felony, to wit: Conspiracy, a felony offense.[2]

12.     The evidence suggests that REDD possessed the fentanyl found in his cross-body bag on May 20, 2026, in Dayton, Ohio, with the intent to distribute it, and additionally, that REDD possessed the Glock 45 9mm firearm in furtherance of his drug trafficking. I know, based on my training and experience, that firearms are tools of the drug trafficking trade. Drug traffickers frequently possess firearms to protect themselves, their drugs, and/or their drug proceeds from rivals who may seek to rob them. That REDD's firearm was loaded with a live round and extended magazine, and that he kept it in the front of his pants where it was readily

---

[1] *See, e.g.*, https://www.dea.gov/resources/facts-about-fentanyl (last accessed May 21, 2026).

[2] Case No. 22-F-98, Circuit Court of Kanawha County, West Virginia.

accessible to him, suggests that REDD may have anticipated a violent encounter, consistent with the risks inherent to drug trafficking.

13. Based on my training and experience, I know that individuals who sell drugs frequently use multiple cellular telephones to facilitate their drug trafficking activity. For instance, drug traffickers may use one cell phone as a personal phone and other cell phones to communicate with criminal associates (e.g., sources of supply, coconspirators, and/or drug customers). I know that one of the cell phones—the TCL flip phone—is a type of phone that drug traffickers frequently use as a "burner phone" to contact drug customers. These types of phones can be cheaply and easily obtained and replaced, and the true user/subscriber of the phone obscured. Drug traffickers frequently change their cell phones to evade detection from law enforcement.

14. Based on the facts set forth in this Affidavit, there is probable cause to believe that D'Arco REDD violated 21 U.S.C. 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute fentanyl, a Schedule II controlled substance) and 18 U.S.C. 924(c) (possession of a firearm in furtherance of a drug offense).

Respectfully submitted,

s/ Sarah Deamron
Sarah Deamron
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me via reliable electronic means on May 22, 2026:

UNITED STATES MAGISTRATE JUDGE